UNITED STATES v. HAMAKER et al. (four cases).

(District Court, D. Oregon. October 14, 1912.)

Nos. 3,671–3,674.

PUBLIC LANDS (§ 13*)—TIMBER TRESPASS—ACTION FOR DAMAGES—DEFENSES —CUTTING FOR SETTLERS.

Act Cong. March 3, 1891, c. 561, § 8, 26 Stat. 1099 (U. S. Comp. St. 1901, p. 1531), provides that, in any action by the United States for trespass on public timber lands in certain designated states, it shall be a defense if defendant shall show that the timber was cut or removed for use in such state or territory by a resident thereof for agricultural, mining manufacturing, or domestic purposes, under rules or regulations made by the Secretary of the Interior, which rules permit the settler to procure timber from government land for agricultural or domestic purposes to the value of $50 per year, and declare that, where such settler is not in a position to procure the timber himself, he may secure the cut-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ting, removing, and sawing through another by an agreement with the party acting as his agent, specifying the amount to be paid for the timber. *Held*, that under such rules the settler might employ defendants to go on the public lands and cut the amount of timber to which the settler was entitled each year and manufacture the same into lumber, so that the settler would receive the entire timber so cut into form of lumber, or to exchange the timber which he is permitted to cut annually for lumber equal in value; and hence, in an action for timber trespass, it was a good defense that defendants had delivered to settlers, in exchange for the timber cut, its value in lumber, the value of the timber in the tree not inuring in any part to defendants' benefit in making the exchange.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 16–18; Dec. Dig. § 13.*]

Four actions by the United States against J. D.. Hamaker and others. Judgment for complainant in two of the cases, and order for dismissal in the other two.

R. F. Maguire, Asst. U. S. Atty., of Portland, Or., for the United States.

Lionel R. Webster, of Portland, Or., for defendants.

WOLVERTON, District Judge. These cases, four in number, bearing docket numbers 3,671, 3,672, 3,673, and 3,674, were instituted by the government to recover damages for trespass in cutting timber on government land, the greater portion of which was removed from the land, manufactured into lumber, and sold. The defendants answer that whatever timber they cut on government land they cut at the instance and by direction and authority of settlers, and that it was taken in exchange for lumber furnished the settlers for use upon their homesteads for domestic purposes.

By a careful examination of the testimony I find that in case No. 3,671 the defendant cut from public land and manufactured into lumber 2,480,212 feet, and felled trees which were left lying on the ground, amounting in board measure to 199,384 feet. Of the amount manufactured into lumber, 630,000 feet was cut at the instance of settlers and homesteaders, and in exchange therefor the defendant delivered to such settlers and homesteaders lumber considered, and which the evidence reasonably shows to be, in value the equivalent of the timber cut. In case No. 3,674, which is against Hamaker and Stindt, a firm composed of J. D. Hamaker and John Stindt, doing business under the name of J. D. Hamaker & Co., I find that the defendants cut and manufactured into lumber 689,803 feet, of which 105,000 was cut at the instance of settlers and homesteaders. The firm also cut 25,217 feet which was allowed to lie on the ground. In each of the other two cases, namely, 3,672 and 3,673, the defendants cut and manufactured into lumber from the government land approximately 100,000 feet. The testimony shows that the timber so cut was cut at the instance of homesteaders; the defendants giving in exchange for such timber lumber equivalent in value thereto.

The defense in each of these cases was interposed under section

8 of the act of Congress of March 3, 1891 (26 Stat. 1099, c. 561 [U. S. Comp. St. 1901, p. 1531]), which provides that in any criminal prosecution or civil action by the United States for trespass upon public timber lands in certain states designated—

"it shall be a defense if the defendant shall show that the said timber was so cut or removed from the timber lands for use in such state or territory by a resident thereof for agricultural, mining, manufacturing or domestic purposes, under rules and regulations made and prescribed by the Secretary of the Interior."

This act was by Act March 3, 1901, c. 855, 31 Stat. 1436 (U. S. Comp. St. 1901, p. 1531), extended so as to comprise the states of California, Oregon, and Washington. Now, in pursuance of the act of March 3, 1891, extended by subsequent legislation, the Commissioner of the Land Office, on February 10, 1900, adopted certain rules, by the third of which it is declared that settlers upon public lands and other residents of the states and territories designated may procure timber free of charge from unoccupied, unreserved, nonmineral public lands within said states and territories, strictly for their own use for firewood, fencing, building, or other agricultural, mining, manufacturing, or domestic purposes, but not for sale or disposal, nor for use by others, nor for export from the state or territory where procured. Where the timber does not exceed $50 in value in any one year, it is declared unnecessary for actual residents to secure permission from the Secretary of the Interior to take the timber. The fourth rule provides that:

"In cases where qualified persons are not in position to procure timber from the public lands themselves, it is allowable for them to secure the cutting, removing, sawing, or other manufacture of the timber through the medium of others upon an agreement with the parties thus acting as their agents that they shall be paid a sufficient amount only to cover their time, labor, and other legitimate expenses incurred in connection therewith, exclusive of any charge for the timber itself."

Rule 5 provides that the uses specified in section 3 constitute the only purposes for which the timber may be taken from public lands.

One of the principal questions urged at the trial involves the construction of the act of March 3, 1891, and of the rules of the Commissioner of the General Land Office made in pursuance thereof. I was strongly impressed at the trial that under the rules last enunciated the settler or homesteader would not be permitted to exchange the timber which he is entitled to cut and remove from the public lands in any one year for lumber, even assuming that the lumber was for use by him upon his homestead for improvements or domestic purposes. But from a careful study of the rules themselves, considered in connection with the case of Shiver v. United States, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231, I have come to the conclusion that it is lawful for a settler to exchange the timber for its value in lumber, though in doing so he shall not pay the party taking the timber anything for the same as timber in the tree.

In the case referred to, the defendant, a homesteader, in the course of acquiring his claim from the government, claimed that the logs which he was charged with cutting from public land were exchanged for lumber and building materials, all of which were put into his improvement. I should say that the case involved the question whether a homesteader is authorized, under the Homestead Law, to exchange timber from the premises for lumber with which to make improvements upon his claim. The trial court instructed that the defendant had the right to cut timber on his homestead suitable and sufficient to build necessary and convenient houses, fences, etc., for a home, and to have that timber sawed into suitable lumber to make such improvements on his homestead, and that he could have exchanged timber for lumber to make such improvements, but only so much as was necessary, and that if he only did this, and did it in good faith, he should be acquitted. The Supreme Court, after citing Washburn on Real Property, touching the right of a tenant for life or years to cut timber from the estate, says:

"By analogy we think the settler upon a homestead may cut such timber as is necessary to clear the land for cultivation, or to build him a house, outbuildings, and fences, and, perhaps, as indicated in the charge of the court below, to exchange such timber for lumber to be devoted to the same purposes, but not to sell the same for money, except so far as the timber may have been cut for the purpose of cultivation. While, as was claimed in this case, such money might be used to build, enlarge, or finish a house, the toleration of such practice would open the door to manifest abuses, and be made an excuse for stripping the land of all its valuable timber. One man might be content with a house worth $100, while another might, under the guise of using the proceeds of the timber for improvements, erect a house worth several thousands. A reasonable construction of the statute—a construction consonant both with the protection of the property of the government in the land and of the rights of the settler—we think restricts him to the use of the timber actually cut, or to the lumber exchanged for such timber and used for his improvements, and to such as is necessarily cut in clearing the land for cultivation."

Now, the rules of the Commissioner of the Land Office permit the settler to procure timber from government land for agricultural or domestic purposes, the same being strictly for his own use, to the amount of $50 per year. But where he is not in position to procure the timber himself, he is allowed to secure the cutting, removing, and sawing through the medium of another, by an agreement with the party thus acting as his agent to do the service, and the amount of the payment to be made for such timber is then specified. There can be no doubt under the rules that it would be permissible for the settler to employ another to go upon the public lands and cut the amount of timber to which he is entitled each year, and manufacture the same into lumber; the settler paying the expenses for such cutting and manufacturing, so that he would receive the entire timber so cut in form of lumber. But many settlers are wholly unable to bear such expense, nor are they, from the nature of things, able themselves to do the physical work of cutting and manufacturing the timber into lumber. In order, therefore, for the settler to get any benefit of the timber where he desires the use of lumber for improving his place or

for domestic purposes, in case he is unable to pay for the cutting and manufacturing, he would have to be permitted to. make an exchange of the timber which he is permitted to cut annually for lumber equal in value. In that way the proceeds of the timber received in lumber would be actually used for the settler's purposes. And so it appears to me that if a homesteader, in the course of acquiring his claim from the government, may be permitted to exchange timber, which it is permissible for him to cut off his homestead for the purposes of improvement thereon, for lumber with which to make such improvements, that it would surely be permissible under the rules of the Commissioner of the General Land Office for a settler to exchange the timber to which he is entitled for the year for lumber with which to make domestic improvements upon his land, and strictly for his own use.

I am therefore of the opinion that the defendants in the case at bar set forth a good defense to their cutting and removing timber from the government land, in so far as they have cut timber at the instance of settlers and residents, and have given in exchange therefor its value in lumber; the value of the timber in the tree not inuring in any part to their benefit in making such exchange.

In conclusion, I find that the value of the manufactured lumber is $10 per thousand. The witnesses testifying as to its value state it at from $10 to $12 a thousand, and I adopt the lesser estimate. For the timber that was cut and left lying on the ground I adopt a value of $1 per thousand, as that seemed to be the general consensus of opinion throughout the trial of the case.

In this view, the defendant in case No. 3,671 should be charged with 1,850,000 feet at $10 per thousand, making $18,500, and with 199,000 feet cut and left lying on the ground at $1 per thousand, $199—in the aggregate, $18,699. This eliminates from said cause the 630,000 feet which is shown to have been cut for settlers and lumber given in exchange therefor.

In case No. 3,674, the defendants should be charged with 689,000 feet, less 105,000 feet, namely, 584,000 feet, at $10 per thousand, or $5,840, and with 25,000 feet waste logs left on the ground, $25—in the aggregate, $5,865.

Mr. J. D. Hamaker in his testimony strongly asserts that he cut no timber whatever on the public land, except under arrangements with and by authority of settlers; but in this he is surely mistaken. The government cruiser, who was very careful in making the cruise, testifies that the larger amount of logs were cut upon the premises all within less than five years preceding the time he made the cruise, to wit, in July and August, 1909. J. D. Hamaker first moved his mill on the premises in 1901, and he was engaged in cutting logs and manufacturing the same into lumber all the time down until he leased the mill to Sykes Hamaker, which was January 1, 1908. He asserts that he got his timber for sawing purposes in the meantime from lands owned by himself, his wife, and Sykes Hamaker. While it is true that he may have cut much timber from these lands, yet it is undoubt-

edly true that he cut a great deal from government lands, and I am compelled to so find under the testimony.

In cases No. 3,672 and No. 3,673 the defendants cut only such timber from the public lands as they were requested and authorized to cut by contract with settlers, and were justified in so doing.

The government should have judgment, therefore, in case No. 3,671 against J. D. Hamaker in the sum of $18,699, and in case No. 3,674 against Hamaker and Stindt in the sum of $5,865; and cases No. 3,672 and No. 3,673 should each be dismissed.